Shanks v. Oil & Gas Co.

No. 25,352.

L. E. Shanks, *Appellee*, v. The Giese Oil & Gas Co. et al.,
*Appellants.*

SYLLABUS BY THE COURT.

Contract—*Cleaning Oil Well and Drilling It Deeper—Operations Suspended at Request of Employer—Contractor Entitled to Compensation for Time His Rig Was Idle.* Where a drilling contractor having an equipment of machinery for drilling oil and gas wells is employed to clean out an old gas well at a specified sum per day and to drill the well deeper at a specified sum per foot, and while so engaged he is induced by his employer to suspend operations for a number of days so that the latter might have an opportunity to sell the lease and to decide whether he would have the well drilled deeper or have the work stopped altogether, the drilling contractor is entitled to fair compensation for the length of time his drilling rig was left idle at the well at the request of the employer but not to be removed therefrom without the latter's consent, and while waiting orders from his employer to proceed or to quit.

Appeal from Elk district court; George J. Benson, judge. Opinion filed July 5, 1924. Affirmed.

*G. J. Sharp,* of Howard, for the appellants.
*Sullivan Lomax,* of Cherryvale, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This lawsuit grows out of a contract of employment for work in cleaning and deepening a gas well. The defendant had an old gas well which it desired to clean out and deepen to the Mississippi "lime," an apparently familiar term in the oil fields used to designate the geological formation near which gas and oil are frequently found. Plaintiff was the owner of an equipment of drilling tools.

The parties made a written contract whereby the plaintiff undertook to clean out the well to a depth of 1,475 feet. For this service he was to be paid the sum of $35 per day. It was also agreed between the parties that when the well was cleaned out, if it was found that the well and casing were in suitable condition, plaintiff was to drill the well deeper "to the first break in the Mississippi lime," etc.

Plaintiff cleaned out the old well in 30 days. He then stopped work, leaving his drilling rig in position for 19 days. He then re-

moved his rig and brought this action for a balance due him for 30 days' work at $35 per day, and for compensation at $20 per day for the time he and his drilling rig were idle. He alleged that he suspended work at the request of defendant, and between February 10, 1923, and March 8, 1923, he held himself in readiness to resume drilling, and—

"That during said period defendants would neither consent for plaintiff to proceed with said drilling or release him and his drilling machine until said 8th day of March, when, by order of defendants, plaintiff quit work permanently and removed his machine; and that the reasonable value of the use of plaintiff's machine and his expense relative thereto during said idle period was $20 per day, amounting to $421.00.

"Third. Plaintiff further alleges that it is the custom of the oil field of Kansas that when the owner of a drilling machine is ordered to hold his men and machine in readiness and await time on the owners of the well being drilled, that the owner of such machine shall receive therefor a reasonable sum for holding such machine and men in readiness to do the bidding of the owners."

Defendant's answer admitted its liability for a balance of $550 due for the plaintiff's 30 days' services for himself, his workmen and his drilling rig at $35 per day, but denied any further liability.

A jury was waived, and the trial court found generally for the plaintiff, allowing him $550 on the balance admitted by defendants to be due him under his contract, and awarding plaintiff the further sum of $380 "for the value of the use of plaintiff's drilling machine for 19 days at $20 per day, which the court finds to be a fair and reasonable compensation for the use of said machine."

Defendant assigns various errors, the first of which pertains to the admission of testimony as to the *opinion* of a witness concerning "the fair and reasonable value per day for the waiting time for the machinery."

If the testimony was incompetent because of defective form, want of hypothetical facts and pertinent circumstances and the like, we are bound to assume that the trial court, having no jury to be led astray thereby, did not permit its judgment to be founded thereon. (*Starbuck v. Kingore,* 112 Kan. 102, 210 Pac. 930.) Moreover, there was other unchallenged testimony, with none to the contrary, that waiting time during which the owner of such a drilling rig as that of plaintiff was prevented from using it was worth from $20 to $100 per day. A witness testified:

"Q. What is the custom? A. Where you are waiting, and the producer,

in case he has got you shut down for any particular reason, without giving you the right to move, if he has got it tied up and you can't get away, it is customary for him to pay you for what time you are shut down and waiting on him.

"Q. What is the customary price?  A. I have seen them paid as high as $100 a day; that is, for 24-hour day; $50 a tower."

The other assignments of error all center about the allowance of $20 per day for the waiting time.  It is argued that the written contract exclusively contained the undertakings of the parties.  But the contract said nothing about waiting time, and it was not justly susceptible of an interpretation that 19 days' waiting time was implied. It was shown to the trial court's satisfaction that the waiting time was caused by the defendant, that it was done at its request and for the purpose of giving it a chance to sell the lease and well project to some possible or prospective customer, and also to decide whether further drilling should be prosecuted or stopped altogether.  It is hardly reasonable to suppose that the plaintiff could afford to let a drilling outfit costing $7,000 or $8,000 sit idle on a well for 19 days at defendant's behest without a promise of fair compensation express or implied.  But it is argued that plaintiff's claim was not founded on contract, but on custom.  That would not vitiate the claim.  It can be readily inferred—and indeed there was testimony to the same effect—that when well drillers suspend operations but leave their drilling rigs in place, at the request of oil lessees, prospectors or speculators, and to suit their purposes, the owners of the drilling tools are entitled to fair compensation for the use of their machinery.  Such a custom conforms with general notions of justice and fair dealing.  We should be surprised to learn that by custom a well driller was not entitled to compensation under such a situation as that presented herein.  From whatever point of view this appeal is considered, no error of law or miscarriage of justice can be discovered therein.

Affirmed.